THIS is an action of assumpsit, and was tried oil the general issue and the plea of payment. It appear *297 ed that the defendant below had been indebted to the plaintiff a considerable sum of money, due by notes, ©n which suits were brought; pending vyhieli, the parties accommodated the matter, and tlie defendant be^ low agreed to secure part of the demand, by a note on another person, and a deed of trust, and to pay down One thousand dollars 'hereof; which arrangement was completed, and the suits dismissed,' with the exception of the matter now in controversy. The agent of the plaintiff below deposed, that the defendant, when the thousand dollars was to be paid, stated to him, that he could make up the sum, if he (the agent) would receive a check or draft on Col. Taylor; for four hundred dollars thereof, payable in. a few days. To the receipt of such check, "the witness objected; stating as his reason, that he had been imposed on by a check, which he had once before been' induced to ac. cept in discharge of a debt which he (the witness' then had the collection of, and which had produced much vexation and trouble; and also, in the same conversation, the witness expressed himself in strong terms of reprobation of such deceptive practice. Some short time after this conversation, the defendant below again applied to the witness, stating, that he had then got the sum of money, and was prepared to close the, arrangement. Both walked together to (he office of the witness, where the defendant below put down upwards of seven hundred dollars in bank notes, and for the balance, being $257 60, produced a check, drawn in favor of said defendant, by Sproúle, Armstrong and Co. on the Bank of Kentucky, in the usual form. This the witness hesitated to acceptbut, reflecting on the conversation he had before had with the defendant relative to imposition by checks, he concluded that the defendant would not present, for his acceptance, a check, without an entire conviction that the money was in bank, and received the check as payment, with the bank notes. The witness stated, that he kept the check some time, perhaps two or three weeks, before he presented it at bank, entertaining no doubt that the money was ready there. He then presented the check, and received for answ'er, that the money was not there, and had not been, from the time the check was drawn.' Some time afterwards, but how long the witness could not remember, he informed one of the house of Sproule, *298 Armstrong and Co. that the check was dishonored, and he promised to settle it, but postponed doing it, from time to time, and at last declined, assigning as a reason, that he must have a settlement with the defendant below, before he could pay it. The witness further stated, that the first time he saw the now defendant, in the ordinary intercourse of life, but how long after the check was dishonored he could not tell, he informed him that the check was not paid, and claimed the amount, which was not paid. The witness, who was agent for the plaintiff, and conducted this matter, the defendant below, the house of Sproule, Armstrong and Co. and the banking house of the Bank of Kentucky, were $11, during these transactions, resident within the town of Frankfort. One of the officers of the bank deposed, that Sproule, Armstrong and Co. had no funds in bank at the date of the check, and since; but, before that time, they hád been in the habit of doing business with the bank. The same officer deposed, that the check, when presented by the plaintiff’s agent, was left with him for ten or twelve days. Evidence was also given by the defendant.below, tending to prove, that by the books of Sproule, Armstrong and Co. they were indebted to the defendant below, more than the amount of the check, at the date thereof.
The counsel for the defendant below moved the court to instruct the jury, that if they believed the plaintiff, or his agent, did not present said check within a reasonable time after he received it, or if he did not, within a reasonable time after non-payment of the check, give notice thereof to the defendant, he, the plaintiff, could not recover the amount thereof. The court below refused the instructions, as asked; but instructed the jury, that if the check was paid in the regular course of business, the law was as contended for by the instructions asked by the defendant’s counsel j but if the defendant induced the plaintiff’s agent to take the check as money, under the belief that the money was then in bank, when in fact there was no money there, and never had been any to pay it, then the demand and notice were unnecessary, and left it with the jury to decide, from the evidence, whether it was a fair transaction or not. The jury found for the plaintiff below, and to reverse it the defendant has *299 prosecuted this writ of error; and now assigns as er. ror, the instructions of the court, and also the decision of that court in overruling a motion for a new trial, which was excepted to, and the evidence spread upon the record.
it is a settled principle, that checks on banks and bills of exchange are ' subject to the same rules, and that checks are treated as domestic bills of exchange. If a person draws a check on one in whose hands he has no money, the holder of it is not - bound to diligence or notice; he may treat it is a piece of blank paper.
But if a person receives a check drawn by another, and passes it in payment, he stands in the attitude of an endorser of a bill of exchange; and if he did not know that the drawer had no money in bank, is not liable, except on due diligence and notice. If the person who receives and passes it-knew that the rawer had no money in the bank, he will he in m/ bet ter situaron than the drawer would.
*299 2. It is a settled principle, that checks and bills of exchange are subject to the same rules, and that checks are treated as domestic bills. If either a bill or check is passed in the payment of a pre-existing debt, and is afterwards dishonored, it is clear law, that no action will lie on the original demand, until the dishonor; nor then, unless due diligence is used, and due notice given of the dishonor of the bill—Chitty oh Bills, 126, 127. To this genéral rule, there are exceptions ; and if, in this instance, the defendant below had drawn this check himself, we should have no hesitation in making his case one of these exceptions; for if he drew upon persons in whose hands lie had no funds, the holder of the check ought to be allowed to treat it as a blank paper, and ought not to be bound, after it was taken in payment of a debt, to diligence and due notice.
S. But in this case, strangers to this transaction drew the check, and the defendant below passed it, and stands in the attitude of an endorser. A bill may be drawn faithlessly, and for fraudulent purposes.; but yet an endorser, who knew not of the bad faith or fraud with which it was drawn, cannot be affected by it, and is entitled, generally, to be treated as other endorsers. It is necessary, to place ah endorser on the same footing with the faithless drawer in this re. snect, that he should have knowledge of the fraud or bad faith, with which the bill was drawn ; but an en. dorser or drawer who knows that a bill is drawn on no funds, and who, notwithstanding, puts-it in circulation to deceive those who purchase, ought not to stand in a better attitude than the drawer; and if he attempts to extinguish a pre-existing debt, by passing the bill, which he knows must be dishonored, we should not feel disposed to discharge him from the obligations of that deb t.
Mere, however, the court Dlaced the stress of the instruction given, upon the fact, whether the money was or was not in bank when the check was drawn, and left the jury to decide against the defendant, if the mo. *300 ney was not there, whether the defendant knew it oí?' not. The money might not be there, and yet the defendant, who passed the check, might not have known it. and might have supposed that it was, as strongly as the plaintiff’s agent, to whom it was passed, if such were his convictiims at the time, he was entitled to reasonable notice, after due diligence, of the dishonor of tiie check, which had not been given. On the contrary. if Ur was conscious there were no funds in bank to discharge the check, \\ hen he induced his, creditor to take it, lie ought to be lLfrle, on the original demand, as if no check was given.
If the instruction given had been thus qualified, we should not feel disposed to disturb the verdict; but as the instruction was calculated to subject the defendant, in case he-passed the check innocently, because there \yer.e no funds, it cannot be sustained.
The judgment must, therefore, be reversed with costs, and the verdict set aside, and the cause remanded for new proceedings, not inconsistent with this opinion, ’ ' - •